UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO

In re:  Chapter 7

**David Earl Bair, Jr.,**

Debtor.

Case No. 1:18-bk-10148

**Barestone, LLC,**

**Michael Carter,**

**Josh Loewenstine,**

**and**

**Kingston Development Group, LLC**

Plaintiffs

vs.  Adversary Proceeding No.

**David Earl Bair, Jr.,**

Defendant-Debtor.

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY
AND OBJECTION TO DEBTORS DISCHARGE UNDER
SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE**

Plaintiff-Creditors Barestone, LLC ("Barestone"), Michael Carter ("Carter"), Josh Loewenstine ("Loewenstine"), and Kingston Development Group ("Kingston"), through

1

undersigned counsel, state and allege as follows for their Complaint against Defendant-Debtor David Earl Bair, Jr. ("Defendant-Debtor"):

## JURISDICTION

1. On January 19, 2018, Defendant-Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Ohio.

2. Defendant-Debtor's initially scheduled meeting of creditors had been set for February 21, 2018 and was duly noticed. That creditors meeting was eventually held pursuant to Section 341 (a) of the Bankruptcy Code on April 2, 2018 (the "Section 341 Meeting").

3. As of the date of this Complaint, Defendant-Debtor has not been granted a discharge.

4. This Complaint is timely because the date by which a complaint objecting to the debtors discharge or to determine dischargeability of a debt expires on April 23, 2018.

5. This is an adversary proceeding in which the Plaintiff-Creditors are objecting to the Defendant-Debtor's discharge under Bankruptcy Code §§ 727 (a) (3) and 727 (a) (4) (A) and are seeking a determination as to the dischargeability of the debt owed by Defendant-Debtor to Plaintiff-Creditors under Bankruptcy Code §§ 523 (a) (2) (A), 523 (a) (4), and 523 (a) (6).

6. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code §§ 523 and 727.

7. This case is a core proceeding pursuant to 28 U.S.C. §§ 157 (b) (2) (I) and 157 (b) (2) (J).

2

## PARTIES

8.  Barestone is a business corporation organized under the laws of the State of Ohio, authorized to do business therein, and maintains its principal place of business at 2372 Madison Road, Unit W1C, Cincinnati, Ohio 45208.

9.  Barestone is a creditor of the Defendant-Debtor.

10. Carter is an individual and resident of Hamilton County and is a member of Kingston.

11. Carter is a creditor of the Defendant-Debtor.

12. Loewenstine is an individual and a resident of Hamilton County and is a member of Kingston.

13. Loewenstine is a creditor of the Defendant-Debtor.

14. Kingston is a limited liability company organized under the laws of the State of Ohio and maintains its principal place of business at 2372 Madison Road, Unit W1C, Cincinnati, Ohio 45208. Kingston is a 60% owner and presently is the managing member of Barestone. Until December 2016, Kingston was a silent investor in the Barestone development project described in this Complaint, during which time Barestone was managed by Bair Build Co., LLC ("Bair Build").

15. Defendant-Debtor Bair is the debtor in the above-captioned case and, at all times relevant to Plaintiff's Complaint, resided at 1800 Tanglewood Drive, Loveland, Ohio 45140. On information and belief, Defendant-Debtor Bair is the manager and controlling member of Bair Build Co., LLC. Defendant-Debtor Bair operated Bair Build Co., LLC as his alter ego.

16. Defendant-Debtor Bair, through his company Bair Build Co., LLC, is a 40% owner of Barestone and, until December 2016, was the managing member of Barestone.

3

## FACTUAL ALLEGATIONS AGAINST DEFENDANT-DEBTOR

17. Kingston and Bair Build formed Barestone in November, 2015 for the primary intent and purpose of acquiring and developing real property located at 1531 and 1533 Republic Street, Cincinnati, Ohio 45202 in Over-the-Rhine (the "Properties").

18. On or about November 27, 2015, Kingston and Bair Build executed an Operating Agreement governing the operation and management of Barestone, as well as their rights and responsibilities to each other as co-Members of the entity (the "Operating Agreement"). A true and accurate copy of this Operating Agreement is attached hereto as **Exhibit A**.

19. Pursuant to Section 6.1 of the Operating Agreement, Bair Build was designated to serve as the Managing Member of Barestone.

20. Barestone and its members intended for Bair Build to renovate and develop the Properties located at 1531 and 1533 Republic Street and for Barestone to sell the Properties to third parties prior to development so that the Properties could be developed to the buyers' specifications.

21. On or about June 30, 2015, Bair Build contracted with Chris Heinold and Kathleen Finn for the sale of 1531 Republic Street for $535,000. The buyers paid a ten percent (10%) deposit to be held as security and applied to the purchase price at closing. The deposit was paid to Bair Build.

22. On or about July 16, 2015, Bair Build contracted with Ravdeep Chanana and Sonia Guleria for the sale of 1533 Republic Street for $550,000. The buyers paid a ten percent

4

(10%) deposit to be held as security and applied to the purchase price at closing. The deposit was paid to Bair Build.

23. For reasons unknown to Plaintiffs, Defendant-Debtor Bair executed the sale contracts for the Properties on behalf of Bair Build, even though Bair Build did not own the Properties.

24. Upon execution of the purchase contracts, Bair Build received from the buyers the security deposits from 1531 Republic (in the amount of $53,500) and 1533 Republic (in the amount of $55,000), but failed to pay the security deposits over to Barestone despite Kingston's repeated demands.

25. Rather than holding the deposits as security, Bair Build converted the deposits for its own use or for the use of Defendant-Debtor Bair and his mother, Suzanne Bair.

26. Bair Build, Barestone, and Kingston agreed that Bair Build was to develop the Properties as general contractor with a construction budget not to exceed $776,000.

27. Bair Build and Defendant-Debtor Bair represented to Plaintiffs that Bair Build had the ability and intention to complete the construction to the buyers' respective specifications within the agreed construction budget.

28. To finance the construction of the Properties, Barestone obtained a construction loan on December 28, 2015 for approximately $672,000 from Union Savings Bank (the "Loan"). Approximately $660,000 of the Loan was available for disbursement and $630,000 was disbursed.

5

29. In order to fund the acquisition cost of the Properties and the balance of the construction budget, each of the two members of Barestone made capital contributions of cash. Kingston, the 60% member, contributed $132,000 and Bair Build, the 40% member, contributed $88,000. Barestone used approximately $105,000 of the contributed capital to acquire the Properties.

30. Kingston and, on information and belief, Barestone and Bair Build intended for the remaining capital of approximately $115,000, plus the funds available to be disbursed on the Loan in the amount of approximately $660,000, to fully fund the construction budget of $776,000.

31. Before construction work on the Properties began in 2016, Bair Build provided Plaintiffs with line item budgets and a revised budget confirming that the project would be completed within the agreed not-to-exceed budget of $776,000.

32. In late 2015 or early 2016, Kingston realized that it had not yet received a copy of a formal written development agreement between Barestone and Bair Build and requested that Defendant-Debtor David Bair Jr. provide it a copy.

33. Defendant-Debtor Bair sent Kingston a document styled as a Development, Management, and Marketing Agreement dated January 15, 2016 (the "January 2016 Agreement") purportedly between Barestone and Defendant Bair Build. It was executed by Defendant-Debtor Bair on behalf of both Barestone and Bair Build. Defendant-Debtor Bair represented that the January 2016 Agreement was an accurate embodiment of the terms upon

which Bair Build and Kingston had agreed. A true and accurate copy of the January 2016 Agreement is attached hereto as **Exhibit B.**

34. Contrary to Defendant-Debtor Bair's representations, the January 2016 Agreement did not accurately include the terms to which Bair Build and Kingston had agreed. In addition to being inaccurate, the terms of the January 2016 Agreement were overly simple and self-serving to Defendant-Debtor Bair and Bair Build. It did not contain terms that would normally be included to protect a property owner in a development agreement and was not the product of an arm's length transaction. The January 2016 Agreement also was never properly approved and authorized by the members of Barestone.

35. Among other major deficiencies, the January 2016 Agreement did not contain any provisions concerning the agreed not-to-exceed construction budget of $776,000.

36. Construction on the Properties began around January 2016. According to the purchase agreements executed by Bair Build, construction on each residence was required to be completed within 18 months of the date of the purchase agreements (December 30, 2016 for the property at 1531 Republic Street, and January 16, 2017 for the property at 1533 Republic Street).

37. During the course of Bair Build's construction work on the Properties, the information that Defendant-Debtor Bair and Bair Build provided to Plaintiffs, such as periodic financial statements and e-mails, indicated that the project was on budget and on target to be completed by the respective contract deadlines.

38. During the course of Bair Build's construction work on the Properties, Defendant-Debtor Bair and/or Bair Build prepared, executed, and delivered to Union Savings Bank progress

7

payment affidavits. On information and belief, some of these affidavits contained inaccurate and intentionally false representations of the progress of the construction. Further, on information and belief, these affidavits overstated and misrepresented the amount of progress that had been made in order to obtain draws on the Loan.

39. On information and belief, Defendant-Debtor Bair and Bair Build were diverting money from the construction on the Properties and using it for other projects unrelated to Barestone or for their own personal benefit.

40. On information and belief, Defendant-Debtor Bair and Bair Build were also diverting money from the construction on the Properties and making payments to Defendant-Debtor Bair, his mother Suzanne Bair, and other Bair family members that were unauthorized by and unrelated to Barestone for their personal pecuniary gain. For example, Suzanne Bair endorsed at least one check to "cash" on behalf of Barestone that was unauthorized and fraudulent.

41. By late 2016, Kingston became concerned that the construction deadline was approaching and the construction on the Properties was not yet complete.

42. On December 1, 2016, Defendant-Debtor Bair and Bair Build provided written assurances to Plaintiffs that:

a. Construction would be substantially completed by December 31, 2016 so that the sale of both Properties could be closed; and

b. Defendant-Debtor Bair would provide regular email updates to Plaintiffs every Monday, Wednesday, and Friday until completion.

A true and accurate copy of the written assurances provided by Defendant-Debtor Bair and Bair Build are attached hereto and incorporated herein as **Exhibit C**.

43. Bair Build also agreed to assume payment of the Loan if construction was not substantially complete by December 31, 2016, and to restructure distributions from Barestone to ensure that Kingston received a preferred distribution of its full capital investment of $132,000 prior to any other distribution being made and a preferred distribution of forty percent (40%) of the remaining proceeds before any other distributions were made from Barestone.

44. Plaintiff Kingston made several site visits to the Property in late 2016 and early 2017, and it was readily apparent to Kingston that construction on the Properties was unlikely to be completed on schedule.

45. Following the site visits, Plaintiff Kingston began a deeper investigation into the construction on the Properties.

46. In late 2016 or early 2017, Kingston discovered with respect to the construction on the Properties that:

a. The construction had run at least $225,000 over the agreed not-to-exceed budget of $776,000;

b. The Loan was nearly fully drawn and the Loan payments were not being made on time by Barestone;

c. significant work remained to be done on both Properties;

d. both Properties had incurred significant setbacks due to improper construction methods implemented by Bair Build and gross mismanagement of the project;

e. the progress reports provided by Defendant-Debtor Bair to Plaintiffs throughout the construction process were false, fraudulent, and purposefully inaccurate, including the omission of change orders, re-work, and inspection deficiencies that were intentionally omitted and concealed;

f. there were numerous unpaid subcontractors;

g. at least $80,000 was missing from the construction funding and purchase deposit monies for the sale of the Properties that could not be accounted for by Defendant-Debtor Bair or Bair Build through supporting invoices or other supporting documentation; and

h. Defendant-Debtor Bair and Bair Build had been "double dipping" on client upgrades by charging and collecting money from the buyers for various upgrades and also drawing money from the construction loan to pay for the upgrades.

47. In December 2016, Plaintiff Kingston removed Bair Build as the managing member of Barestone and appointed itself as the managing member.

48. Plaintiffs refrained from taking action against Defendant-Debtor Bair or Bair Build at that time in reliance upon representations and assurances made by Defendant-Debtor Bair and Bair Build.

49. Contrary to Defendant-Debtor Bair and Bair Build's assurances, Defendant-Debtor Bair and Bair Build did not provide regular email updates to Plaintiffs and the updates that they did provide were later shown to contain material misrepresentations of fact.

50. Contrary to Defendant-Debtor Bair and Bair Build's assurances, neither of the Properties were completed by December 31, 2016.

51. In light of its discoveries regarding the status of construction on the Properties, in early 2017 Kingston demanded that Defendant-Debtor Bair, Bair Build, and Suzanne Bair complete the construction on the Properties using their own funds.

52. Defendant-Debtor Bair, Bair Build, and Suzanne Bair failed and refused to complete the project using their own funds, despite that the budget over-run was exclusively attributed to their gross mismanagement of the project, misuse of the construction funds, and other wrongful acts.

53. Defendant-Debtor Bair, Bair Build, and Suzanne Bair also failed to make the mortgage payments on the Loan after January 2017, despite the assurances made by Defendant-Debtor Bair and Bair Build. On information and belief, all payments made on the Loan after January 2017 were made by Barestone.

54. Based on the refusal and failure by Defendant-Debtor Bair, Bair Build, and Suzanne Bair to complete the project, Kingston took over management of construction on 1531 Republic Street, which was closer to completion. Kingston expended its own funds to complete construction and close on the property, which occurred in July 2017.

55. Kingston paid off numerous subcontractors of Bair Build, including subcontractors that had performed work on both 1531 and 1533 Republic Street, in order to facilitate the closing on 1531 Republic Street.

56. Prior to closing, Defendant-Debtor Bair executed and delivered to Plaintiffs an affidavit in which he represented that all subcontractors who performed work on 1531 Republic Street had been paid off. After closing, Plaintiffs learned that this affidavit was false and that at least one subcontractor remained to be paid, whom Barestone paid.

57. At closing on the sale of 1531 Republic Street, Defendant-Debtor Bair, Bair Build, and Suzanne Bair failed to deliver to Barestone the security deposit in the amount of $53,500, and therefore the sale proceeds paid to Barestone at closing were reduced by $53,500. Defendant-Debtor Bair, Bair Build, and Suzanne Bair informed Plaintiffs that Bair Build had spent the security deposit for both Properties and that it would not pay the deposit over to Barestone.

58. Plaintiffs filed a Complaint in the Hamilton County Court of Common Pleas related to the above facts on September 8, 2017 in Case No. A 1704728. A true and accurate copy of Plaintiff's Complaint is attached hereto as **Exhibit D.**

### 59. COUNT I - NON—DISCHARGEABILITY OF PLAINTIFF'S CLAIMS UNDER § 523(a)(2) OF THE BANKRUPTCY CODE

60. Plaintiffs incorporate by reference and reallege, as if fully rewritten herein, the allegations contained in Paragraphs 1 through 58 of their Complaint.

61. Bankruptcy Code § 523(a)(2) provides, in pertinent part, that:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

>   ...
>   (4) for money, property, services, or an extension, renewal, or refinancing for credit, to the extent obtained by-
>   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>   (B) use of a statement in writing –
>   (i) that is materially false;
>   (ii) respecting the debtor's or an insider's financial condition;
>   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>   (iv) that the debtor caused to be made or published with intent to deceive...

62. All or a substantial part of the debt owed to Plaintiffs, as evidenced by the facts alleged in Plaintiffs' Complaint in the Hamilton County Common Pleas Court Action in Case Number A 1704728, is a non—dischargeable debt due to false pretenses, a false representation, or actual fraud and use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied and that the debtor caused to be made or published with intent to deceive within the meaning of Bankruptcy Code § 523(a)(2).

### COUNT II - NON—DISCHARGEABILITY OF PLAINTIFF'S CLAIMS UNDER § 523(a)(4) OF THE BANKRUPTCY CODE

63. Plaintiffs incorporate by reference and reallege, as if fully rewritten herein, the allegations contained in Paragraphs 1 through 62 of their Complaint.

64. Bankruptcy Code § 523(a)(4) provides, in pertinent part, that:

>   (b) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>   ...
>   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...

65. All or a substantial part of the debt owed to Plaintiffs, as evidenced by the facts alleged in Plaintiffs' Complaint in the Hamilton County Common Pleas Court Action in Case

13

Number A 1704728, is a non—dischargeable debt due to fraud, defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(4).

## COUNT II - NON—DISCHARGEABILITY OF PLAINTIFF'S CLAIMS UNDER § 523(a)(6) OF THE BANKRUPTCY CODE

66. Plaintiffs incorporate by reference and reallege, as if fully rewritten herein, the allegations contained in Paragraphs 1 through 65 of their Complaint.

67. Bankruptcy Code § 523(a)(4) provides, in pertinent part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
> …
>
> (6) or willful and malicious injury by the debtor to another entity or to the property of another entity…

68. All or a substantial part of the debt owed to Plaintiffs, as evidenced by the facts alleged in Plaintiffs' Complaint in the Hamilton County Common Pleas Court Action in Case Number A 1704728, is non—dischargeable as it is a debt for willful and malicious injury caused by Defendant-Debtor Bair within the meaning of Bankruptcy Code § 523(a)(6).

## COUNT III - OBJECTION TO DEBTOR'S DISCHARGE UNDER § 727 (a)(3) OF THE BANKRUPTCY CODE

69. Plaintiffs incorporate by reference and reallege, as if fully rewritten herein, the allegations contained in Paragraphs 1 through 68 of their Complaint.

70. Bankruptcy Code § 727(a)(3) provides, in pertinent part, that:

> (a) The court shall grant the debtor a discharge, unless…
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial

14

condition or business transactions might be ascertained, unless such act or failure was justified under all of the circumstances of the case…;

71. Defendant-Debtor Bair of his own accord, in the operation of Bair Build, and in the course and scope of his dealings with Plaintiffs, concealed, destroyed, falsified, or failed to keep and preserve recorded information from which his present financial condition or recent business transactions could be ascertained and did so without justification with the express purpose of concealing his intentional, willful, and wanton embezzlement and theft of Plaintiffs' funds and his willful and intentional misuse of those funds to his personal or familial gain.

72. By virtue of the foregoing actions, Defendant-Debtor's discharge should be denied under Bankruptcy Code § 727(a)(3).

### COUNT III - OBJECTION TO DEBTOR'S DISCHARGE UNDER § 727 (a)(4) OF THE BANKRUPTCY CODE

73. Plaintiffs incorporate by reference and reallege, as if fully rewritten herein, the allegations contained in Paragraphs 1 through 72 of their Complaint.

74. Bankruptcy Code § 727(a)(4)(A) provides, in pertinent part, that:

(a) The court shall grant the debtor a discharge, unless…

(4) the debtor knowingly and fraudulently, in or in connection with the case…;

(A) made a false oath or account….

75. Defendant-Debtor Bair knowingly and fraudulently, in or in connection with the instant case, made a false oath or accounts, in that he represented in the periodic financial statements and e-mails to Plaintiffs that the development project was on budget and on target to be completed by the respective contract deadlines.

76. Defendant-Debtor Bair knowingly and fraudulently, in or in connection with the instant case, made a false oath or accounts, in that he prepared, executed, and delivered to Union Savings Bank progress payment affidavits which, on information and belief, contained inaccurate and intentionally false representations which overstated and misrepresented the amount of construction progress that had been made in order to obtain draws on the Loan.

77. Defendant-Debtor Bair knowingly and fraudulently, in or in connection with the instant case, made a false oath or accounts, in that he represented in the December 1, 2016 written assurances that construction would be substantially completed by December 31, 2016 and that he would provide regular email updates to Plaintiffs.

78. By virtue of Defendant-Debtor's false representations and material omissions, and the oath he took concerning the veracity of his submissions within the instant Petition and Statement of Financial Affairs attached to that Petition, Defendant-Debtor's discharge should be denied under Bankruptcy Code § 727(a)(4)(A).

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment determining that the debt owed by Defendant-Debtor in favor of Plaintiff, in an amount not less than $200,000.00 plus reasonable interest, is non-dischargeable under Bankruptcy Code §§ 523(a)(2), 523(a)(4), 523(a)(6), 727 (a)(3), 727(a)(4)(A) or, in the alternative, denying the Defendant-Debtor's discharge under Bankruptcy Code §§ 727 (a)(3) and 727(a)(4)(A), and granting Plaintiffs such other and further relief as this Court may deem just, proper, and equitable.

Respectfully Submitted,

*Brian R. Redden* /BR/

Brian R. Redden (Ohio Bar No. 0070610)
**Buechner Haffer Meyers & Koenig Co., LPA**
105 E 4th Street, Suite 300
Cincinnati, Ohio 45202
Tel.: (513) 579-1500
Fax: (513) 977-4361
E-mail: bredden@bhmklaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on April 23, 2018 and shall be served upon all counsel of record via e-mail and through this Court's CM/ECF filing system and, if not represented, to the party's address of record on the creditor matrix in this action attached to Defendant-Debtor's Petition.

*Brian R. Redden* /BR/

Brian R. Redden
*Counsel for Plaintiffs*